IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CONSTRUCTURE MANAGEMENT, INC. ) <br> 103 Great Valley Parkway ) <br> Malvern, PA 19355 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MUKESH MAJMUDAR ) <br> 12119 Dusk View Court ) <br> Clarksville, MD 21029 ) <br> ) <br> HOPKINS HOSPITALITY INVESTORS, LLC ) <br> 7226 Lee Deforest Drive, Suite 200 ) <br> Columbia, MD 21046 ) <br> ) <br> HOPKINS INVESTORS, LLC ) <br> 7226 Lee Deforest Drive, Suite 200 ) <br> Columbia, MD 21046 ) <br> ) <br> STAR DEVELOPMENT GROUP, LLC ) <br> 7226 Lee Deforest Drive, Suite 200 ) <br> Columbia, MD 21046 ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:16-cv-2309 |

## COMPLAINT

Constructure Management, Inc., by and through its undersigned attorneys, hereby files this Complaint against Defendants Mukesh Majmudar, Hopkins Hospitality Investors, LLC, Hopkins Investors, LLC, and Star Development Group, LLC and avers as follows:

### THE PARTIES

1. Plaintiff Constructure Management, Inc. ("CMI") is a Pennsylvania corporation with its principal place of business located at 103 Great Valley Parkway, Malvern, Pennsylvania 19355. CMI is

primarily engaged in the business of construction management services and is licensed in the State of Maryland.

2. Upon information and belief, Defendant Mukesh Majmudar is an individual with his principal residence located at 12119 Dusk View Court, Clarksville, Maryland 21029.

3. Upon information and belief, Defendant Hopkins Hospitality Investors, LLC ("Hopkins Hospitality Investors") is a limited liability company organized under the laws of the State of Maryland with its place of business located at 7226 Lee Deforest Drive, Suite 200, Columbia, MD 21046.

4. Upon information and belief, Defendant Hopkins Investors, LLC ("Hopkins Investors") (collectively with Hopkins Hospitality Investors, the "Hopkins Entities") is a limited liability company organized under the laws of the State of Maryland with its place of business located at 7226 Lee Deforest Drive, Suite 200, Columbia, MD 21046.

5. Upon information and belief, Defendant Star Development Group, LLC ("Star") is a limited liability company organized under the laws of the State of Maryland with its principal place of business located at 7226 Lee Deforest Drive, Suite 200, Columbia, MD 21046.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that complete diversity of citizenship exists between the Parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b)(1) and b(2), as Defendants are citizens of the State of Maryland and the fraud which is the subject of this action occurred in and/or from the State of Maryland.

# FACTUAL BACKGROUND

8. This lawsuit arises from Defendant Majmudar's purposeful misrepresentation and concealment of his single purpose, limited liability companies' siphoning of funding earmarked for building a hotel complex that his companies were developing by deceiving Plaintiff into completing the construction work, knowing as a result of his actions that insufficient funds existed to pay for it.

### A. The Hotel Construction Project Undertaken by CMI for Defendant's Companies

9. On or about April 8, 2013, CMI entered in a contract ("Contract") with Star to serve as the general contractor for the construction of a Homewood Suites hotel located in Laurel, Maryland ("Project").

10. The original value of the Contract that Star agreed to pay CMI for the Project was eleven million, five hundred and forty-one thousand dollars and zero cents ($11,541.000.00) ("Contract Price").

11. The Project, located at 7531 Montpelier Road, Laurel, Maryland 20723, entailed building a hotel complex, with its components being a six-story tower containing 114 hotel rooms, a fitness center, a business center, a pool, an attached one-story building with a lobby, restaurant and meeting rooms, and the surrounding site work, including parking lot and landscaping.

12. The Project is owned by the Hopkins Entities.

13. Upon information and belief, Hopkins Hospitality Investors is a single purpose entity with its sole asset being an ownership interest in the Project.

14. Upon information and belief, Hopkins Investors is a single purpose entity with its sole asset being an ownership interest in the Project.

15. Hopkins Hospitality Investors and Hopkins Investors are affiliates.

16. Star is an affiliate of Hopkins Hospitality Investors.

17. Star also is an affiliate of Hopkins Investors.

18. Upon information and belief, Defendant Majmudar was the managing member of Hopkins Hospitality Investors at all relevant times hereto.

19. Upon information and belief, Defendant Majmudar was the managing member of Hopkins Investors at all relevant times hereto.

20. Upon information and belief, Defendant Majmudar was the managing member of Star at all relevant times hereto.

21. Defendant Majmudar signed the Contract with CMI on behalf of Star.

22. Defendant Majmudar was the representative for Star, Hopkins Hospitality Investors and/or Hopkins Investors with decision-making authority and project management responsibility on behalf of those entities with respect to the Project.

23. Defendant Majmudar also served as the primary point of contact for communicating with CMI on behalf of Star and the Hopkins Entities with respect to the Project.

**B.    The Hopkins Entities and Star Obtaining Financing from a Lender to Pay for Construction of the Project.**

24. To pay for construction of the Project, Hopkins Hospitality Investors obtained funding through a loan from PeoplesBank, A Codorus Valley Company (the "Lender") in the amount of $11,556,000 to cover construction costs and contingency for change orders ("the Construction Loan").

25. Evidencing the availability of the Construction Loan to pay for construction of the Project, Star and/or the Hopkins Entities provided CMI with a letter from the Lender dated May 2, 2013 stating that "PeoplesBank has provided Hopkins Hospitality Investors LLC with a commitment for financing including but not limited to $11,556,000 for construction costs and contingency for change orders." A true and correct copy of this letter is attached hereto as <u>Exhibit 1</u>.

26.     CMI received a copy of the letter attached as Exhibit 1 from Star and/or the Hopkins Entities before beginning work on the Project.

27.     Given the risk of performing a construction project for single-purpose entities, CMI relied on the Lender's letter and the existence of the Construction Loan to pay for the labor, materials and equipment that would be furnished to construct the hotel Project.

**C.    During the Project, Defendant Knowingly and Intentionally Misled CMI into Believing that Star and the Hopkins Entities Had Sufficient Funding in the Construction Loan to Pay CMI for its Ongoing Work.**

28.     The Contract contained provisions permitting CMI to requisition progress payments for work completed on a monthly basis.

29.     Each month during the Project, CMI, primarily through its Chief Executive Officer Charles McAteer IV, and Controller Jason Colfer, prepared and submitted a document known as an Application and Certification for Payment ("Payment Application") to Star, the Project architect, and the Lender for the purpose of requisitioning progress payments for the work completed during the pay period.

30.     As part of the progress payment process, Star required CMI's Payment Applications to show how payments would be distributed to CMI's subcontractors and vendors.

31.     At least from Payment Application No. 4 (work completed to August 31, 2013) forward, subcontractors and vendors of CMI who would receive payments were identified on a "Payee List" attached to CMI's Payment Applications.

32.     Upon approval of Payment Applications, Star and/or the Hopkins Entities then requested that the Lender release funding from the Construction Loan to pay CMI and/or its subcontractors.

33. After receiving funding from the Lender, the Hopkins Entities issued checks to CMI and/or its subcontractors.

34. CMI submitted twenty-six (26) Payment Applications for payment for work performed on the Project.

        *a.*    *Defendant Majmudar Misrepresented and Concealed the Hopkins Entities' and/or Star's Substantial Withdrawals from the Construction Loan in Connection with Payment Application No. 22*

35. For the first time in connection with Pay Application No. 22 (requesting payment for work in January and February 2015), Defendants required that CMI include certain additional costs allegedly incurred by the Hopkins Entities/Star with respect to the Project in its Payment Application so that they could receive reimbursement for those costs from the Construction Loan.

36. During the preparation of Pay Application No. 22 in February through early April 2015, Defendant Majmudar informed Mr. McAteer and Mr. Colfer through conversations and correspondence that Star's additional costs to be reimbursed from the Construction Loan were comprised of the following amounts, totaling $41,570.86:

    i.    ARD&H (Star's legal counsel) - $10,000

    ii.    Star Development Group - $12,000

    iii.    Star Billings Not on Previous AIA (Payment Application) - $19,570.86

37. When discussing Star's alleged costs identified above in Paragraph 36, Defendant Majmudar did not tell Mr. McAteer and Mr. Colfer that the Hopkins Entities and/or Star previously had been taking funds from the Construction Loan to obtain reimbursement for other expenses they had incurred with respect to the Project.

38. When discussing the alleged costs identified above in Paragraph 36, Defendant Majmudar did not tell Mr. McAteer and Mr. Colfer that, at or around the time of the submission of Payment Application No. 22 to the Lender, the Hopkins Entities and/or Star also would be requesting that the Lender release funds from the Construction Loan to reimburse loan interest expenses.

39. At the time Payment Application No. 22 was submitted, CMI had no reason to suspect that the Hopkins Entities and/or Star were taking funds from the Construction Loan to reimburse themselves for expenses other than the specific expenses that Defendant Majmudar told CMI to insert in the Payee List included with Payment Application No. 22.

40. Based on Defendant Majmudar's statements indicating that only $41,570.86 would be removed from the Construction Loan to reimburse the Hopkins Entities and/or Star, CMI submitted Payment Application No. 22. A true and correct copy of Payment Application, No. 22 is attached hereto as <u>Exhibit 2</u>.

      b. *Defendant Majmudar Again Misrepresented and Concealed the Hopkins Entities' and/or Star's Substantial Withdrawals from the Construction Loan in Connection with Payment Application No. 23*

41. Once again, in connection with Payment Application No. 23, Defendant Majmudar informed CMI that he was requiring certain alleged costs incurred by the Hopkins Entities/Star to be included within CMI's Payment Application and reimbursed from the Construction Loan.

42. During the preparation of Pay Application No. 23 in April and May 2015, Defendant Majmudar informed Mr. McAteer and Mr. Colfer in conversations and correspondence that the Hopkins Entities/Star's additional costs to be reimbursed from the Construction Loan were comprised of the following and totaled $21,268:

      i.        Star Development Group - $3,500

      ii.       Carney, Kelehan, et al. - $1,364.00

      iii.      Davis Agnor Rapaport Skalny $12,404.00

      iv.      Brookline Furniture - $4,000

43. When discussing the alleged costs identified above in Paragraph 42, Defendant Majmudar again did not tell Mr. McAteer and Mr. Colfer that, at or around the submission of Payment Application No. 23 to the Lender, the Hopkins Entities and/or Star also would be requesting that the Lender release funds from the Construction Loan to reimburse loan interest expenses.

44. When discussing Star's alleged costs identified above in Paragraph 42 with Mr. McAteer and Mr. Colfer, Defendant Majmudar also did not correct his previous omission of the fact that the Hopkins Entities and/or Star previously had taken funds from the Construction Loan before Payment Application No. 23 to obtain reimbursement for expenses not disclosed to CMI or identified on the Payee Lists in the Payment Applications.

45. At the time Payment Application No. 23 was submitted, CMI had no reason to suspect that the Hopkins Entities and/or Star had taken funds from the Construction Loan to reimburse themselves for expenses other than the expenses that Defendant Majmudar told CMI to insert in the Payee List included with Payment Application Nos. 22 and 23.

46. Based on Defendant Majmudar's statements indicating that only $21,268 would be removed from the Construction Loan to reimburse Star, CMI submitted Payment Application No. 23. A true and correct copy of Payment Application, No. 23, is attached hereto as <u>Exhibit 3</u>.

47. After Payment Application No. 23, Defendant Majmudar did not disclose any draws from the Construction Loan to reimburse Star and/or the Hopkins Entities for any other alleged backcharges to the Contract, including but not limited to, loan interest expenses.

**D. Defendant Did Not Disclose the True Amount of His Companies' Withdrawals from the Construction Loan until the Hotel Was Open for Business and CMI was Expecting Full and Final Payment for its Work.**

48. CMI continued to work on the Project for several months following the submission of Payment Applications Nos. 22 and 23, and in the process, completed substantial work at significant cost and expense.

49. A Certificate of Occupancy for the hotel was received on or about August 6, 2015, and the hotel opened to the public a few weeks later.

50. At the completion of the Project, there was a substantial balance of the Contract Price, as well as pending change orders, due and owing to CMI ("Contract Balance").

51. As CMI had not requested, authorized, or knew of any other draws from the Construction Loan other than through its Payment Applications, CMI expected at the time of its close-out discussions with Defendant Majmudar that the balance of the Construction Loan equaled the Contract Balance.

52. In September, October and November 2015, Mr. McAteer and Mr. Colfer had several telephone calls and in-person meetings with Defendant Majmudar in an effort to close out the Contract and receive payment of the Contract Balance.

53. Prior to the discussions with Defendant in October 2015, CMI did not know that the Hopkins Entities and/or Star had withdrawn more than $62,838.86 from the Construction Loan to reimburse themselves for alleged Project expenses.

54. During a meeting with Mr. McAteer and Mr. Colfer in October 2015, Defendant Majmudar revealed for the first time to CMI that the Hopkins Entities and/or Star previously had taken several hundreds of thousands of dollars more from the Construction Loan to pay other expenses, including interest on the financing obtained for the Project, and as a result, the balance of the Construction Loan actually was significantly less than the Contract Balance CMI was expecting.

55. In the October 2015 meeting with Mr. McAteer and Mr. Colfer, Defendant Majmudar represented that the Hopkins Entities and/or Star had drawn as much as $600,000 to $800,000 from the Construction Loan to reimburse themselves for supposed Project expenses they incurred, including $550,000 in interest on the financing obtained for the Project.

56. Based on Defendant Majmudar's recent discussions with CMI, it appears that the Hopkins Entities and/or Star had already removed several hundreds of thousands of dollars from the Construction Loan to reimburse alleged Project expenses prior to CMI's submission of Payment Application Nos. 22 and 23, that over $100,000 was being secretly drawn from the Construction Loan contemporaneously with CMI's submission of Payment Application Nos. 22 and 23, and that the practice of hiding draws from the Construction Loan continued in the months after Payment Application Nos. 22 and 23 while CMI was completing construction of the Project.

57. In February, March and April 2015 when Payment Application Nos. 22 and 23 were being prepared, Defendant Majmudar knew (i) that the Hopkins Entities and/or Star already had taken out hundreds of thousands of dollars from the Construction Loan to reimburse Project expenses, including interest expenses; (ii) that draws from the Construction Loan were continuing to take place for the purpose of reimbursing the Hopkins Entities and/or Star for Project expenses, including interest expenses; and (iii) that CMI was unaware of withdrawals except for $62,838.86.

58. Despite Defendant's knowledge of the true amount of withdrawals by his companies, Defendant Majmudar failed to disclose any draws from the Construction Loan for interest expenses when he told CMI to include other specific expenses in the Payee Lists accompanying Pay Application Nos. 22 and 23.

59. Instead, Defendant informed CMI of only seven expenses totaling $62,838.86 that would be drawn from the Construction Loan as part of Payment Application Nos. 22 and 23 to repay the Hopkins Entities' and/or Star's expenses.

60. Upon information and belief, Defendant Majmudar's intent when concealing the additional draws exceeding $550,000 was to mislead CMI into believing that only a relatively small fraction of the Construction Loan would be used to repay Hopkins Entities' and/or Star's expenses and to hide the fact that insufficient funds remained to pay CMI for completing the Project.

61. As Defendant Majmudar disclosed some of the expenses the Hopkins Entities and/or Star would be reimbursed from the Construction Loan, but Defendant did not share with CMI its separate communications with the Lender regarding funding requests, CMI had no reason to suspect Defendant's statements were in fact, half-truths, and that the Hopkins Entities and/or Star were actually making undisclosed, more substantial draws from the Construction Loan which substantially diminished the available funding to pay CMI for the construction work.

62. In addition, Star had paid most of the previous Payment Applications while it was withdrawing undisclosed funds from the Construction Loan, which further deflected inquiry into the actual balance of the loan.

63. Consequently, CMI relied on Defendant's representations that only $62,838.86 would be drawn from the Construction Loan as part of Payment Application Nos. 22 and 23 to repay the Hopkins

Entities' and/or Star's expenses, and CMI continued to expend substantial resources building the Project based on its understanding that sufficient funds remained in the Construction Loan to pay for completion of the construction work.

64. Had Defendant Majmudar disclosed the actual expense reimbursements that the Hopkins Entities and/or Star were taking from the Construction Loan when he gave CMI the expense information to include in the Payee Lists accompanying Payment Application Nos. 22 and 23, CMI would have stopped work on the Project or taken other measures necessary to prevent having substantial, unreimbursed exposure to subcontractors and vendors providing labor, materials, and equipment to CMI for the Project.

65. Unaware of the actual balance of the Construction Loan due to Defendant Majmudar's misrepresentations and concealment, CMI continued to perform work on the Project under the misimpression that sufficient funds exists to pay for it.

66. Following Defendant's initial misrepresentation and/or concealment of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan in connection with Payment Application No. 22, CMI incurred approximately $3,365,831.82 to perform the construction work on the Project.

67. Following Defendant Majmudar's initial misrepresentation and/or concealment of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan in connection with Payment Application No. 22, CMI received payment in the approximate amount of $1,720,544.61.

68. Defendant's misrepresentation and/or concealment of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan resulted in CMI incurring losses on the Project in an amount not less than $1,645,287.21.

## COUNT ONE
### (Fraudulent Misrepresentation)

69. CMI incorporates by reference all of its averments in the preceding paragraphs as if fully restated herein.

70. Any and all applicable and enforceable conditions precedent to bringing this action have occurred or been performed.

71. As set forth above, the Hopkins Entities and/or Star had affirmatively represented to CMI that the Construction Loan was dedicated to pay "construction costs and contingency for change orders." (See Ex. 1.)

72. As set forth above, Defendant Majmudar made statements to CMI's Mr. McAteer and Mr. Colfer in January through April of 2015 regarding the nature and extent of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan, which were represented by Defendant to be taken for the purpose of reimbursing their alleged expenses with respect to the Project.

73. Defendant Majmudar's representations to Mr. McAteer and Mr. Colfer were false at the time they were made, as the Hopkins Entities and/or Star had been withdrawing, and was continuing to withdraw, substantial amounts from the Construction Loan for other expenses, including financing costs, that Defendant did not also disclose to CMI at the time of his representations concerning the amount of expenses to be included in the Payee Lists for Payment Application Nos. 22 and 23.

74. In particular, Defendant Majmudar represented to CMI in connection with preparing Payment Application Nos. 22 and 23 that only $62,838.86 would be drawn from the Construction Loan to repay the Hopkins Entities' and/or Star's expenses, when in fact, the Hopkins Entities and/or Star had already withdrawn hundreds of thousands of additional dollars to repay interest and other expenses, and

would continue to withdraw additional funds for undisclosed purposes contemporaneously with the very same Payment Applications.

75.     In total, the Hopkins Entities and/or Star withdrew approximately $600,000 to $800,000 from the Construction Loan by the completion of the Project, which actions were contrary to the representation that the Construction Loan was dedicated to the work and which Defendant hid from CMI's representatives until the hotel was open for business as a result of CMI's efforts.

76.     CMI first learned that Defendant misrepresented the true amount of the withdrawals from the Construction Loan in meetings with Defendant in October 2015.

77.     Defendant Majmudar intentionally misrepresented the nature and extent of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan to shed his companies' risk of loss, induce CMI to complete the Project so that the hotel could open for business without CMI knowing that insufficient funding existed to fully pay CMI for its work, and thereby make his single purpose limited liability companies judgment proof.

78.     As the managing member of the Hopkins Entities and Star with managerial responsibility and decision-making authority, Defendant Majmudar knew, or at the very least, recklessly disregarded, the actual amount of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan at the time Defendant made false and misleading statements to CMI's representatives in connection with Payment Applications Nos. 22 and 23.

79.     As Defendant Majmudar's misrepresentations to CMI were made personally as well as in his capacity as managing member, employee and/or representative of Hopkins Hospitality Investors, Hopkins Investors and Star, all Defendants are jointly and severally liable for the losses sustained by CMI.

80. As a direct and proximate result of Defendant's misrepresentations, CMI has suffered $1,645,287.21 in compensatory damages completing construction of the Project, as well as substantial additional attorneys' fees, costs and expenses arising from claims and demands for payment from subcontractors and suppliers that were made to CMI and its surety for costs that could not be reimbursed from the remaining balance of the Construction Loan.

81. Defendants also are jointly and severally liable for punitive damages as a result of Defendant Majmudar's intentional and knowing misrepresentations to CMI of his companies' withdrawal of funds from the Construction Loan, without any regard for CMI's interest in knowing the truth of the availability of funds to pay CMI for the work performed on the Project.

WHEREFORE, Plaintiff Constructure Management, Inc. respectfully requests that the Court enter judgment jointly and severally against Defendants and in favor of Plaintiff, awarding Plaintiff compensatory damages in an amount not less than $1,645,287.21, and punitive damages in the amount of $5,000,000.00, plus interest, costs, and attorneys' fees, as well as any other relief the Court finds just and proper.

### COUNT TWO
### (Fraudulent Concealment)

82. CMI incorporates by reference all of its averments in paragraphs one through sixty-eight (68) of this Complaint as if fully restated herein.

83. Any and all applicable and enforceable conditions precedent to bringing this action have occurred or been performed.

84. As set forth above, Defendant Majmudar made statements to CMI's Mr. McAteer and Mr. Colfer in January through April of 2015 regarding the nature and extent of the Hopkins Entities'

and/or Star's withdrawals from the Construction Loan, which were represented by Defendant to be taken for the purpose of reimbursing their alleged additional expenses with respect to the Project.

85. Specifically, Defendant represented that the Hopkins Entities/Star were drawing $41,570.86 in Payment Application No. 22 and $21,268 in Payment Application No. 23 to repay expenses from the Construction Loan.

86. As a result of Defendant's affirmative representations regarding the draws taken from the Construction Loan by the Hopkins Entities/Star to repay expenses, Defendant owed duties to CMI not to make partial statements of fact and not to conceal other material information from CMI that qualified his affirmative representations.

87. In breach of the foregoing duties to CMI, Defendant's representations to Mr. McAteer and Mr. Colfer were substantially incomplete at the time they were made, and in fact, only an insignificant slice of the truth. When Defendant affirmatively represented that the Hopkins Entities/Star had a total of $62,838.86 in expenses that would be reimbursed from the Construction Loan, Defendant failed to disclose that the Hopkins Entities/Star had been withdrawing, and were continuing to withdraw, substantial additional amounts to reimburse other expenses, including financing costs that ultimately exceeded $550,000.

88. By the end of the Project, the Hopkins Entities and/or Star withdrew approximately $600,000 to $800,000 from the Construction Loan, an amount which Defendant concealed from CMI until the Project was complete and his companies could generate revenue from the hotel that was open for business as a result of CMI's efforts.

89. CMI first learned that Defendant concealed the true amount of the withdrawals from the Construction Loan in meetings with Defendant in October 2015.

90. Because of Defendant's continuing concealment of the actual balance in the Construction Loan, CMI expended significant resources completing the Project unaware that Defendant's companies were raiding the Construction Loan in such a substantial amount that more than half of the Contract Balance is now gone from the Construction Loan, and therefore, insufficient funds exist to pay CMI for its work, while Defendant and his companies reap profits from a hotel completed because of CMI's efforts.

91. Defendant intentionally concealed and suppressed the truth regarding the nature and extent of the Hopkins Entities' and/or Star's withdrawals from the Construction Loan to shed his companies' risk of loss, induce CMI to complete the Project so that the hotel could open for business without CMI knowing that insufficient funding existed to fully pay CMI for its work, and thereby make his single purpose limited liability companies judgment proof.

92. As Defendant Majmudar fraudulently concealed the truth regarding the Construction Loan from CMI in his individual capacity, as well as in his capacity as managing member, employee and/or representative of Hopkins Hospitality Investors, Hopkins Investors and Star, all Defendants are jointly and severally liable for the losses sustained by CMI.

93. As a direct and proximate result of Defendant's fraudulent concealment, CMI has suffered $1,645,287.21 in compensatory damages, as well as substantial additional attorneys' fees, costs and expenses arising from claims and demands for payment from subcontractors and suppliers that were made to CMI and its surety for costs that could not be reimbursed from the remaining balance of the Construction Loan.

94. Defendants also are jointly and severally liable for punitive damages as a result of Defendant Majmudar's intentional and knowing misrepresentations to CMI of his companies'

withdrawal of funds from the Construction Loan, without any regard for CMI's interest in knowing the truth of the availability of funds to pay CMI for the work performed on the Project.

WHEREFORE, in the alternative to Count One, Plaintiff Constructure Management, Inc. respectfully requests that the Court enter judgment on Count Two jointly and severally against Defendants and in favor of Plaintiff, awarding Plaintiff compensatory damages in an amount not less than $1,645,287.21, and punitive damages in the amount of $5,000,000, plus interest, costs, and attorneys' fees, as well as any other relief the Court finds just and proper.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues that are triable by a jury.

Dated: June 22, 2016                     Respectfully Submitted,

/s/
Jonathan R. Wright (Bar No. 18338)
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Pl., Suite 1000
McLean, VA 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
jwright@watttieder.com

Of Counsel:

Adam M. Tuckman (not admitted in Maryland)
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Pl., Suite 1000
McLean, VA 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
atuckman@watttieder.com

*Attorneys for Constructure Management, Inc.*